CHARLES LAKE, ADMINISTRATOR, APPELLANT, v. WILLIAM J. ROSE ET AL., APPELLEES; ELIZABETH TYNON ET AL., INTERVENERS, APPELLEES.

FILED JANUARY 13, 1932. No. 27963.

*Kelligar & Kelligar,* for appellant.

*Paul Jessen, Ernest F. Armstrong, F. G. Hawxby* and *E. Ferneau, contra.*

Heard before ROSE, GOOD and DAY, JJ., and CHAPPELL and LANDIS, District Judges.

LANDIS, District Judge.

This is an appeal in equity from a decree of foreclosure of two mortgages and a determination of the priority of the respective mortgage liens. Appellant and appellees agree that both of the mortgages should be foreclosed, and the only contention is as to priority of the liens created by these mortgages.

Subsequent to the decree of foreclosure, Ruhamah Jane

Lake, plaintiff below, died intestate, and this action was revived in the name of Charles Lake, administrator of her estate, who is appellant here.

Ruhamah Jane Lake, referred to in the record as Mrs. Lake, was at the time of the trial 81 years of age. She had no business experience; did her banking at the Nemaha County Bank, and relied entirely on the various officers of the bank at all times.

In 1921 Mrs. Lake had a small real estate holding and $4,500 in United States Liberty bonds. She says Miss Elizabeth Tynon advised her to sell the bonds and loan the proceeds on a first mortgage on farm land and get 7 per cent. interest. The bank sold the bonds October 7, 1921, for $4,022.46, and proceeded to invest the same for Mrs. Lake. This investment by the bank for Mrs. Lake consisted in transferring to her its notes of W. J. Rose for $338 and $3,700. At the time the investment was made W. J. Rose owed the bank $21,257.82. He was not a first class credit risk, and it is a fair inference from the record that these notes were of doubtful value. W. J. Rose is now insolvent.

On May 22, 1924, W. J. Rose executed a mortgage on 160 acres to the Nemaha County Bank to secure a $4,038 note. By its terms the mortgage provides that it is subject to a $16,000 mortgage and one for $13,200. The bank surrendered the $338 and $3,700 notes of W. J. Rose belonging to Mrs. Lake for the $4,038 note and mortgage. On the same date W. J. Rose executed another mortgage on the same land to the Nemaha County Bank to secure five notes aggregating $13,200. The $4,038 mortgage was due May 22, 1925. The $13,200 mortgage had a due date of May 22 for $3,000 in each of the years 1925, 1926, 1927, and 1928, with $1,200 due May 22, 1929. No interest was ever paid on the $13,200 mortgage indebtedness; no assignments were produced for these mortgages, and at the time of the failure of the Nemaha County Bank in September, 1929, each of them was of record in the name of the bank in the office of the register of deeds of Nemaha county, Nebraska.

During all times pertinent to this case Elizabeth Tynon was a stockholder and active officer of the Nemaha County Bank. In the bank was an account carried in the name of Wm. Tynon for convenience, but which was a family account belonging to Elizabeth Tynon, her brother, and five sisters. Elizabeth Tynon had full charge of this account; made all investments therefrom for the interested parties, and annually each received one-seventh of the interest earned.

On May 23, 1924, while acting for herself and her brother and sisters, Elizabeth Tynon drew a check on this family account for $13,200 to the Nemaha County Bank for the W. J. Rose notes and mortgage. Each of the Tynons thus acquired an undivided one-seventh interest in the notes and mortgage.

Mrs. Lake was paid interest every six months by the bank, whether collected or not from W. J. Rose. The record shows that at times this interest was paid by Elizabeth Tynon as an officer of the bank. After the bank failed Mrs. Lake, for the first time, finds she has a third mortgage instead of a first mortgage. By receiving her interest regularly for years she was lulled into the belief that the proceeds of her bonds were at all times secure in a first mortgage, and having complete faith in the bank and Elizabeth Tynon, she relied on them with the childlike confidence of age.

The record convincingly shows that the officers of the bank took an unfair advantage of Mrs. Lake. Elizabeth Tynon, an active officer of the bank, with full knowledge of the situation, while acting for herself and others who gave her full authority to so act, gained, under the circumstances, the unfair advantage of a record preference over Mrs. Lake's mortgage, and comes into a court of equity, with her brother and sisters, seeking to confirm the priority of the Rose mortgage owned by the Tynons over the Rose mortgage owned by Mrs. Lake.

William A. Tynon, Katherine Tynon, Louise Tynon, Margaret Tynon, Rose Tynon, and Josephine Tynon Vance,

being the brother and five sisters who own six-sevenths of the Rose mortgage, had no knowledge of the acts of the bank officers and their dealings with Mrs. Lake. Each of these have the same equities as Mrs. Lake, and though in equity and good conscience, under the peculiar circumstances of this record, the priority of the one-seventh interest of Elizabeth Tynon in the Rose mortgage cannot be sustained, yet the brother and five sisters should be protected along with Mrs. Lake.

Upon a trial *de novo*, we reach the independent conclusion that the undivided six-sevenths interest of William A. Tynon, Katherine Tynon, Louise Tynon, Margaret Tynon, Rose Tynon, and Josephine Tynon Vance, the owners of the Rose mortgage, other than Elizabeth Tynon, and such portion of the Rose mortgage owned by Mrs. Lake as equals one-seventh of the Rose mortgage owned by the Tynons, should be and is found to be concurrent second liens. The balance due on the Rose mortgage owned by Mrs. Lake to be a third lien. Elizabeth Tynon's undivided one-seventh interest in the Rose mortgage to be a fourth lien.

The judgment of the district court is reversed and the cause remanded, with directions to enter decree in accordance with this opinion.

REVERSED.